IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PASQUALINA CECERO | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLSTATE INSURANCE CO. | : | NO. 06-286 |

<u>**MEMORANDUM**</u>

**Padova, J.**                                                                      **December 3, 2007**

I.      BACKGROUND

Presently before the Court in this insurance loss case is the post-trial motion filed by Defendant Allstate Insurance Company.  The case was tried by Judge Clifford Scott Green shortly before his untimely death and resulted in a verdict in favor of the Plaintiff in the amount of $ 227,000.[1]  The jury also found in favor of the Plaintiff on Allstate's counterclaim for insurance fraud.

II.     STANDARDS OF REVIEW

Allstate, which moved for judgment as a matter of law at the close of the Plaintiff's evidence and again at the end of the trial, now moves pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law or, in the alternative, a new trial.  Rule 50(b), which governs the renewal of a motion for judgment at a matter of law, provides in pertinent part as follows:

> The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment. . . .  The movant may alternatively request a new trial or join a motion for a new trial under Rule 59.
>      In ruling an a renewed motion, the court may:

---

[1]Pasqualina Cecero died after the lawsuit was initiated.  By Order of November 7, 2006, her son and administrator, Peter Cecero, Sr., was substituted as the party plaintiff.

      (1) if a verdict was returned:
            (A) allow the judgment to stand,
            (B) order a new trial, or
            (C) direct entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).[2]  "[J]udgment as a matter of law should be granted sparingly."  Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993).  Thus, a motion for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability."  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993) (citing Wittekamp v. Gulf & Western Inc., 991 F.2d 1137, 1141 (3d Cir. 1993)).  In deciding a motion for judgment as a matter of law, the court may not weigh the parties' evidence or determine the credibility of the witnesses.  Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000).  In addition, the court must disregard all evidence favorable to the nonmoving party that the jury is not required to believe.  Id.  Though "judgment as a matter of law should be granted sparingly, a scintilla of evidence will not enable the non-movant to survive a Rule 50 motion."  Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 665 (3d Cir. 2002).

Allstate has moved in the alternative for a new trial pursuant to Federal Rule of Civil Procedure 59.  Rule 59 provides, in relevant part, as follows:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

Fed. R. Civ. P. 59(a).  Under the law of this circuit, "[a] new trial is appropriate only when the

---

    [2]Rule 50, as well as Rule 59, was amended effective December 1, 2007.  Because the motion was filed prior to that date, we consider it under the then existing versions of both Rules.

verdict is contrary to the great weight of the evidence or errors at trial produce a result inconsistent with substantial justice." Sandrow v. United States, 832 F. Supp. 918, 918 (E.D. Pa. 1993) (citing Roebuck v. Drexel Univ., 852 F.2d 715, 735-36 (3d Cir. 1988)).  When the basis of the motion for a new trial is an alleged error involving a matter within the sound discretion of the trial court, such as the court's evidentiary rulings or points of charge to the jury, the trial court has wide discretion in ruling on the motion.  Griffiths v. CIGNA Corp., 857 F. Supp. 399, 410 (E.D. Pa. 1994) (citing Link v. Mercedes-Benz of N. Am., Inc., 788 F.2d 918, 921-22 (3d Cir. 1986)).

However, the trial court's discretion to grant a new trial is more limited when the asserted ground is that the verdict is against the weight of the evidence.  In that instance, the motion should only be granted "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the court's] conscience." Greenleaf v. Garlock, Inc., 174 F.3d 352, 366 (3d Cir. 1999) (quoting Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991)).  Where, as in the instant case, "the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations . . . ." Williamson, 926 F.2d at 1352.  In reviewing a motion for a new trial, the court must "view all the evidence and inferences reasonably drawn therefrom in the light most favorable to the party with the verdict." Marino v. Ballestas, 749 F.2d 162, 167 (3d Cir. 1984) (citation omitted).

III.    THE RULE 50 MOTIONS AND JURY CHARGE

Allstate moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 on Count I (breach of contract) and Count II (bad faith) at the close of the Plaintiff's case, arguing that the loss suffered by the Plaintiff, water damage resulting from a burst pipe in her kitchen, was subject to an

exclusion in the Policy that provided:

> We do not cover loss to the property described in Coverage A –
> Dwelling Protection or Coverage B – Other Structures Protection
> consisting or caused by:
>
> . . .
>
> 14.   Freezing of plumbing, fire protective sprinkler
> systems, heating or air conditioning systems
> or household appliances or discharge, leakage
> or overflow from within these systems or
> appliances caused by freezing, while the
> building structure is vacant, unoccupied or
> being constructed unless you have used
> reasonable care to:
> a)   maintain heat in the
> building structure; or
> b)   shut off the water
> supply and drain the
> system and appliances.

Policy, page 9.  Judge Green denied the motion as to the contract claim and took the motion under

advisement as to the bad faith claim.  Plaintiff moved for judgment as a matter of law on the contract

claim, as well as Allstate's counterclaim for civil insurance fraud.  Judge Green denied the motion

as to the civil insurance fraud claim and took the motion under advisement as to the contract claim.

At the close of all evidence, both sides renewed their motions.  Judge Green granted Allstate's

motion on the bad faith claim, thereby dismissing Count II.  He denied all other motions.

In making his Rule 50 decision, Judge Green stated:

> . . . as I understand it, the Allstate policy provision does not cover loss at the
> resident's premises caused by or resulting from freezing while the building structure
> is vacant, unoccupied, or under construction unless you have used reasonable care to
> maintain heat in the building structure, or shut off the water supply, and drain the
> water from the systems and appliances.
>
> Under that particular definition, I do not believe that there is evidence from
> which a jury could find that coverage is not provided for this house at the time.
>
> First given the circumstances . . . it is clear to me that the only evidence here
> has to be that when recovered from her disability, that the insured intended to return

to the building.  There is evidence, of course, the evidence is clear that she intended to maintain heat in the building.  The gentleman from Hollywood has testified that they annually supplied oil, that oil had been supplied this year, that they had had the thermostat or thermostats maintained in an attempt to balance the heating demands of husband and wife when they were there, and under those circumstances, it seems to me that they have done that which is reasonable.

(Tr. 5/14/07 at 33-34.)  The next day, when instructing the jury, Judge Green charged in part that:

There is no question in this case that there is a policy that covered the property, and that policy was issued by Allstate.  That has never been in dispute.

The question, which was presented, one of the questions presented was whether or not the occurrence, whatever occurred, and there was dispute as to how and what occurred, whatever occurred, there was a question as to whether there was language in the policy that excluded that as an occurrence.

In the course of a trial, there comes a point in time where certain questions the Court has to answer, and certain questions the jury will be called upon to answer.

As to whether or not there was a covered occurrence, the Court has answered that, Yes.  As to whether or not there are defenses to that covered occurrence, that issue is still before you.  As to whether or not there was a counterclaim, a valid counterclaim asserted in this action, that issue is still before you, and counsel will have the occasion to argue that.

So the Court has not determined that plaintiff is entitled to recover any amount, or that defendant is not obligated to pay any amount, only that the occurrence is covered by the provisions of the policy.

(Tr. 5/15/07 at 20.)

IV.    ALLSTATE'S POST-TRIAL MOTIONS

a.    Policy Coverage – Applicability of Exclusion

In its first ground for new trial, Allstate argues that Judge Green committed reversible error when he ruled, as a matter of law, that Pasqualina was occupying the Property at the time of the loss and had taken reasonable steps to maintain heat in the Property.  It argues, citing Kinner v. Southwestern Mut. Fire Ass'n., 185 A. 194 (Pa. 1936), as well as cases from other jurisdictions, that the term "occupied," as used in the Policy, requires "habitual human presence" in the Property.  See id. at 195 (quoting Kinner v. Southwestern Mut. Fire Ass'n., 179 A. 800, 802 (Pa. Super. 1935)

(holding that the word "is to be construed with reference to the nature and character of the building, the purpose for which it is designed, and the uses contemplated by the parties as expressed in the contract. A dwelling house being designed as the abode of mankind, is occupied when human beings habitually reside in it, and unoccupied when no one lives or dwells in it;" under terms of policy at issue, an absence in excess of ten days constituted unoccupancy)); see also Couch on Insurance § 94:117 ("occupied" means "actual use of the premises by human beings as their customary place of abode, not continuously, but as a place of usual return."). Allstate argues that the evidence demonstrated that Pasqualina had not resided in the Property for at least six months prior to the loss, due to her illness. Thus, according to Allstate, Judge Green erred when he instructed the jury as a matter of law that she "occupied" the Property. We reject this argument.

As can be readily comprehended from Judge Greens' quoted ruling, he denied the Rule 50 motion because there was sufficient evidence from which the jury could determine that the insured satisfied the Policy requirement because she *intended to return* to the home after her convalescence – not that she physically occupied the home – and took reasonable steps to maintain heat in the Property while she was hospitalized. We find that this holding was not error. Numerous authorities add an exception to the "habitually residing" test to cover situations like those established here: where the occupant is away from the home but intends to return. Allstate's citation to Couch fails to mention the exception to the rule:

> There is no breach of a vacancy or unoccupancy provision by a vacancy which is temporary and reasonable under the circumstances. Accordingly, *a mere temporary vacancy* or absence of the owner, tenant, or occupant, or a temporary period of nonuse, which is reasonable in view of the contemplated uses of the property and of all the circumstances, and *which is evidenced by some act or acts fairly showing not only an intent to return, but also an intent not to vacate or give up occupancy* or use of the premises, or to abandon them for the purposes of their use, *will not of itself*

*operate as a breach of a condition as to vacancy or nonoccupation*, even though the same act may have been commenced, which, when completed, will constitute such a vacancy or nonoccupancy. *But this general rule must be governed by the wording of the particular condition or conditions of the policy*, the character of the occupancy as well as that of the premises insured, or of the purposes for which they were intended to be used, having also in view the object to be accomplished and the degree of protection to be effected or necessitated by the particular condition or conditions involved and applicable, and by the insurance of the property.

Couch on Insurance § 94:118 (citing *inter alia* Kinner, 185 A. 194.) (emphasis added).  See also

Allan E. Korpela, LL.B., Annotation, What Constitutes "Vacant or Unoccupied" Dwelling Within

Exclusionary Provision of Fire Insurance Policy, 47 A.L.R.3d 398 (1973) (noting that "cases dealing

with the question of what constitutes a vacant or unoccupied dwelling within the meaning of an

exclusionary provision in a fire insurance policy have taken the position that an expected temporary

absence resulting from an occupant's leaving or moving out to stay or live elsewhere, *with intent to*

*return*, or a temporary interval between the moving out and the moving in of different occupants, if

of reasonable duration,  does not cause the premises to become vacant or unoccupied within meaning

of such provisions.") (emphasis added) (citing Doud v Citizens' Ins. Co., 21 A. 505 (Pa. 1891); Roe

v Dwelling House Ins. Co. of Boston, 23 A. 718 (Pa. 1892)).   All of Plaintiff's fact witnesses

testified that Pasqualina always intended to return to the Property after her convalescence.  (See, e.g.

Adriane Cecero Testimony of 5/7/07 at 18; Peter Cecero, Jr. Testimony of 5/7/07 at 3; Peter Cecero,

Sr. Testimony of 5/8/07  at 12.)

To the extent that the Pennsylvania Supreme Court's decision in Kinner refused to recognize

intent to return as an exception to the unoccupancy exclusion, we conclude that the decision must

be limited to its facts and distinguished.  Kinner's holding, that the insurer was not liable for the fire

loss, turned on specific policy language voiding coverage if the insured vacated the property for more

than ten days.  Id. at 195-96 (holding that "When a company insures a house against fire, it is entitled

to have the property occupied, and therefore presumably protected by the occupants, except when

the occupants are away for brief periods.  The period during which this insurance company was

willing to tolerate unoccupancy, unless special permit was asked for and obtained, was ten days.").

The Court held that  this

> language . . . was unequivocal.  The owner of the property covered by this insurance
> contract could have been left in no doubt as to what these words meant.  This court
> would not be justified in holding that the clearly expressed contractual stipulation
> quoted did not mean exactly what it stated.  The occupancy the company demanded
> in the policy, except for periods not exceeding ten days, was not the occupancy of
> "intentions to return," left behind by a tenant, or of mere "inanimate objects."

Id. at 196.  Here, unlike in Kinner, the exclusion did not prescribe a specific number of days of

unoccupancy beyond which the occupancy requirement could not be satisfied, but rather provided

that coverage was excluded where the building structure was "vacant, unoccupied or being

constructed unless you have used reasonable care to . . . maintain heat in the building structure . . .

."  The fact that the language of the exclusion expressly *permitted* the Property to be vacant, so long

as heat was maintained, demonstrates that this exclusion was not intended to be "unequivocal."  As

the excerpt from Couch makes clear, the unoccupancy rule must be governed by the wording of the

particular condition or conditions of the policy.

    Importantly, Judge Green also found that there was sufficient evidence that Pasqualina

intended to maintain heat in the building, a conclusion with which, upon a review of the transcript,

we entirely agree.  The evidence, viewed in the light most favorable to the Plaintiff, showed that the

oil service company had supplied oil for the year, and had acted to maintain the thermostat in an

attempt to balance the heating demands of Pasqualina and her late husband.  (Peter Cecero, Sr.

Testimony of 5/8/07 at 132-40.)  There was also testimony from all of Plaintiff's fact witnesses that the home was warm every time it was visited during the winter months when Pasqualina was convalescing, and that there was no damage to the Property as late as March 15, 2005.  (See, Adriane Cecero Testimony of 5/7/07 at 18-23; Peter Cecero, Jr. Testimony of 5/7/07 at 7-10; Peter Cecero, Sr. Testimony of 5/8/07 at 11-19.)  This evidence was sufficient to support a reasonable verdict that the unoccupancy exclusion did not apply because heat was reasonably maintained.  Accordingly, the post-trial motion is denied in this regard.

       b.     Jury Instruction that the Loss was Covered by the Policy

Allstate next argues that it is entitled to a new trial because Judge Green's jury instructions, both prior to and after closing arguments, improperly removed from the jury's consideration the issue of whether the loss was covered under the Policy.  We find that Judge Green's charge did not direct the jury to find that the *loss* was covered; he only instructed that the *Property* was covered by the Policy, and that water damage caused by a broken pipe was a covered occurrence.  He went on to specifically instruct the jury that "[a]s to whether or not there are defenses to that covered occurrence, that issue is still before you."  (Tr. 5/15/07 at 20.)

It is settled law that, "[i]n determining whether they are so misleading or inadequate as to be sufficiently prejudicial to warrant a new trial, jury charges are to be viewed as a whole."  See Savarese v. Agriss, 883 F.2d 1194, 1202 (3d Cir. 1989); Northeast Women's Center, Inc. v. McMonagle, 689 F.Supp. 465, 473 (E.D. Pa. 1988).  No error is present where "the challenged instructions accurately state the law relating to the particular issue under scrutiny."  Drames v. Sun River Inv., S.A., 820 F. Supp. 209, 215 (E.D. Pa. 1993).  "Error in jury instructions warrants a new trial only if the court is persuaded, based on the record as a whole, that the error was prejudicial; if

the charging error would not have changed the trial result, a new trial cannot be granted." <u>Delgrande</u>

<u>v. Temple Univ.</u>, Civ. A. No. 96-3878, 1997 WL 560176, at *4 (E.D. Pa. Aug. 7, 1997).

Prior to the summations, Judge Green told the jury that there was "no question in this case

that there is a policy that covered the property, and that that policy was issued by Allstate," and "[a]s

to whether or not there was a covered occurrence, the Court has answered that, Yes." (Tr. 5/15/07

at 20.)  He then added that "[a]s to whether or not there are defenses to that covered occurrence, that

issue is still before you."  (<u>Id.</u>)  After counsel finished their summations, Judge Green charged the

jury that "I have determined that the premises owned by plaintiff was covered by an insurance policy,

and that the insurance policy would also cover the particular occurrence to the pipe, so that is not

before you."  (<u>Id.</u> at 26-27.)  He then went on to instruct the jury on the elements of breach of the

insurance contract, as well the law covering Allstate's defenses of failure to cooperate, concealment

and misrepresentation and insurance fraud.  (<u>Id.</u> at 29-34.)  At side-bar following the reading of the

charge, Allstate objected as follows:

> MS. STEIN:  Your Honor, if I understood the Court this morning or yesterday, the
> Court didn't find that there was coverage.  The Court found that the exclusion or
> occupancy and reasonable care did not apply, but there wasn't a finding that there
> was actual coverage for the loss –
> THE COURT: Well, let me say this.  There was a finding that a policy of insurance
> –
> MS. STEIN: Right.
> THE COURT:  – which covered the building.
> MS. STEIN: Correct.
> THE COURT: And that there was a loss that was not excluded by the policy.
> MS. STEIN: Well, but that's not correct, because if it didn't occur on the date that
> they said, it might be excluded by the policy for the terms for concealment and fraud
> [sic].
> THE COURT: Well, I've already ruled on that.  I think it was pretty clear that if there
> is a covered loss under the policy, which is the only loss under the policy that is being
> contended is the one that was discovered on April 15th, it's the only one, the only
> one that I know of.  Are you saying that –

MS STEIN: But you're not finding that it occurred April the 7th, that's for the jury to define, to find whether it occurred in January or April the 7th.   There's –

THE COURT: If you want me to tell the jury that my determination that this loss does not set forth any date on which it occurred I will.

MR. PONZIANO: Well, I don't see the relevance in that either, your Honor.   The Court's found that the insurance company didn't meet its burden of proving if it's [sic] exclusion apply [sic].   So there's coverage.   It's just undisputed that it's a covered loss, and a broken pipe in the kitchen is a covered loss.

MS STEIN: It's not –

MR. PONZIANO: Of course it is.

MS. STEIN:  – it's not a covered loss if they misrepresented when it occurred.

MR. PONZIANO: Well, it's a defense.

(Id. at 41-42.)  Counsel for Allstate went on to make clear that her objection went to the fact that the instruction implied that the loss was covered when, if the jury determined that fraud or concealment of the date of the loss took place, the loss would not be covered:

MS. STEIN: It would be covered if it occurred when they said it did.  The Court's not finding there's coverage for this loss or there's a date dispute.  That's part of the defense.  There's a date dispute here.

(Id.)  Judge Green responded, "Well, I will tell the jury that – and I think I made it plain, but I understand what you are saying – but I will tell the jury."  (Id. at 44.)  After the side-bar, Judge Green told the jury:

When I said that the Court had determined certain issues concerning the policy, I limit that determination to the fact that the Court has determined that there is a policy issued by Allstate, which covers a loss, such as the lawsuit upon[3], and that issue not for you to determine, whether or not any statements were made to you that – concerning the loss, the extent of the loss, the timing of the loss is for you determine, and they expressly to be considered in you answer both under verdict sheet Question 1, and verdict sheet Question 3.

(Id. at 48) (footnote added.)  In its post-trial motion, Allstate argues that its side-bar objection went to the factual dispute concerning whether the loss occurred in January or in April 2005, and it was

---

[3]"Lawsuit upon" should probably read "that sued upon."

for the jury to determine if there was coverage under the Policy based upon concealment and fraud. Allstate asserts that the Court overruled this objection.

Our reading of the transcript does not comport with this assertion. Judge Green did not overrule counsel's objection; he granted it and reinstructed the jury that "the timing of the loss is for you to determine." Having fully charged the jury on Allstate's concealment and fraud defenses, and made clear to the jury that "[a]s to whether or not there are defenses to that covered occurrence, that issue is still before you," we find that the follow-up instruction was sufficient to address the objection, and the instructions read as a whole accurately stated the law relating to Allstate's defenses and the questions the jury had to determine. Accordingly, the post-trial motion is denied in this regard.

c.      Objections to Glen Frederick's Testimony

Allstate next argues that Judge Green erred when he permitted Plaintiff's expert witness Glen Frederick to testify beyond the scope of his expert report. Specifically, Allstate takes issue with testimony regarding experiments Frederick conducted ten years earlier with regard to how pipes fracture when frozen and with regard to testimony about the growth of mold following a flood. As stated earlier, when the basis of the motion for a new trial is an alleged error involving a matter within the sound discretion of the trial court, such as the court's evidentiary rulings or points of charge to the jury, the trial court has wide discretion in ruling on the motion.

In discussing the basis and information he examined to arrive at his opinions in the case, Frederick listed in his expert report his "previous experience with frozen piping, including test freezing of plastic and cooper [sic] piping." When Plaintiff asked him to describe that testing, Allstate raised a contemporaneous objection to the testimony:

> Q.      Could you just briefly explain what you're referring to there?  What type of testing you did in the past?
>
> A.      Probably ten years ago, I took some small diameter pipes and filled them with water and sealed them up and froze them in a freezer, just to – well, a couple of things.
>
> MR. LABAR:  Objections, your Honor.
>
> THE COURT: What is the objection?
>
> MR. LABAR:  I had previously raised this issue with you, your Honor.  I had handed you up a case on the testing, and the fact that we have not been supplied any of the tests or the data for this.
>
> THE COURT: Well, this is part of his general education and knowledge.
>
>          You didn't do that in regard to this particular case?
>
> THE WITNESS: No, no, your Honor.
>
> THE COURT: No. This was ten years ago he said, and I will overrule your objection.

(Tr. 5/11/07 at 13.)  We find that Judge Green did not abuse his discretion in permitting Frederick

to describe his testing.  Judge Green's conclusion that the evidence involved Frederick's general

education and background to give his opinion is not an unreasonable conclusion.  If the testing had

involved the actual pipe at issue in the case, or Frederick had done testing to prepare for his

testimony, Allstate's argument that it was never provided with the test results may have been proper.

Clearly, however, the testing Frederick performed ten years earlier was not in connection with this

litigation and was offered to show his general knowledge of the materials.  Accordingly, Allstate's

motion is denied in this regard.

Allstate also argues that Frederick's testimony on the growth of mold was beyond his

expertise.  This testimony was offered just after Frederick testified as to the rate of flow from the

pipe break:

> Q.      Okay.  A lot of the pictures show quite a bit of mold in that house, too, and those pictures were taken probably withing a week or two after it was discovered.  If it ran a week before it was discovered, so let's say ten, 15 maximum 20 days after the pipe breaks, you see extensive mold throughout the house, would that be possible?
>
> MR. LABAR:  Objection, your Honor, I don't think he has any experience or there

-13-

hasn't been any testimony of mold experience and the length of –

MR. PONZIANO: Well, if I may, your Honor, ask him some questions if he has any mold experience in his –

THE COURT: Yes, you may.

BY MR. PONZIANO:

Q.      Do you have any experience in mold in your background?

A.      I have – because – because of my HVAC experience, I have done work for numerous insurance companies in trying to find the source of the mold. I do not hold myself out as being an expert as to what kind of mold it is, or what its health affects [sic] are. I also do a lot of gardening, and plant work, and stuff like that on the side.

Q.      Well, let's just stick to your –

A.      Yeah, I know.

Q.      Profession.

A.      But –

Q.      Have you had a chance to observe mold damage in your career?

A.      Yes.

Q.      Okay. And do you think you have a pretty good idea of determining how fast mold would grow based on what you've done in your work experience?

MR. LABAR: Objection, your Honor.

THE COURT: I will overrule the objection.

(Id. at 32.) Frederick went on to opine that, given the correct conditions, mold can appear almost overnight, and that, with the rate of flow from this broken pipe, it was reasonable to conclude that the mold damage in the Property could have occurred within one week of the flood. (Id. at 33.)

In its motion, Allstate argues that the rate of mold growth testimony was improper because there was no mention in Frederick's report that he had any experience in mold identification or classification, and his report made no reference to mold. We find that this argument has no merit. First, Allstate's initial objection at trial was based solely on the ground of Frederick's lack of expertise, not that he failed to mention mold in his report. We find that it was not an abuse of discretion for Judge Green, faced with an objection as to an expert's qualification, to permit counsel to establish his qualifications through additional voir dire. Allstate's follow up objection, when Frederick was asked to give his actual opinion, stated no specific ground upon which the testimony

should be excluded.  Allstate clearly failed to raise the question of whether the mold issue was in the report – the basis of its argument in the post-trial motion.  Faced with only a non-specific objection, we find that Judge Green did not abuse his discretion by permitting the testimony.  Accordingly, Allstate's motion is denied in this regard.

> d.      Error in Excluding the Testimony of Robert Monaco.

Robert Monaco is an employee of Vallis Associates, and the supervisor of Dan Seeley. Seeley, who inspected the fuel oil tank at the Property and found that it contained several inches of water, produced two expert reports for Allstate, the second of which was co-signed by Monaco. Monaco is a public engineer, Seeley is not.  Allstate sought to call Monaco as an expert to opine that he agreed with the conclusions in Seeley's reports.  (Tr. 5/7/07 at 13.)

In pre-trial motions practice, Plaintiff sought to exclude Monaco from testifying at trial on the ground that he was never properly disclosed as an expert witness by Allstate under Fed. R. Civ. P. 26.  (Pl. Motion in Limine at 3.)  Pursuant to the Court's scheduling order, expert reports were to be filed no later than December 28, 2006.  Plaintiff asserted that Monaco was not disclosed as an expert until February 2, 2007, after it became clear to Allstate that Seeley's opinions would be attacked on the basis of his lack of engineering credentials.  Allstate responded, admitting that it did not identify Monaco as a potential expert witness until February 2, 2007.  It asserted, however, that it had previously identified Monaco's employer, Vallis Associates, as having information relevant to the case in its initial disclosure, and had provided the report signed by both Seeley and Monaco, in the course of discovery.  Thus, it argued, Plaintiff was not prejudiced by the late notice.  (Resp. at 5-6.)  On March 21, 2007, Judge Green entered an order dismissing the motion in limine without prejudice and with leave to reassert the motion during the course of trial.  The same order reopened

-15-

discovery for the limited purpose of permitting Plaintiff to depose Monaco.

At trial, Plaintiff again moved to bar testimony by Monaco.  (Tr. 5/7/07 at 9.)  Counsel asserted that he noticed Monaco's deposition but that Vallis would not let him take the deposition unless  Counsel paid Vallis first.  Judge Green had previously ordered the parties to share the cost of deposing Seeley; Plaintiff's Counsel had not paid Vallis his half.  Vallis refused to produce Monaco without advance payment.  (Id.) Counsel for Allstate asserted that Judge Green had ordered the parties to split the cost of the Monaco deposition as well, but that Plaintiff refused to make the payment and thus the deposition was never held.  (Id. at 14.)  This condition is not contained in Judge Green's March 21 Order.  In making his decision barring Monaco from testifying, Judge Green ruled that he had never ordered Plaintiff to share the cost of the Monaco deposition; he had only ordered the parties to share the cost of Seeley's deposition.  (Id. at 41.)  He found it was improper for Vallis to have held the Monaco deposition "hostage."  To the extent that Allstate offered Monaco as a second expert to vouch for Seeley's opinions and to give his own opinion, Judge Green ruled that Allstate's failure to make him available for a deposition prevented him from testifying.  (Id. at 41-43.)

Allstate argues in its post-trial motion that Judge Green erred in excluding Monaco's testimony, which was probative to the issues in the case because Plaintiff attacked Seeley's expert report in part on Seeley's lack of engineering credentials.  We find that this argument has no merit. The standard we use on post-trial motions is not the probative / prejudice test of Fed. R. Evid. 403, but whether the trial decision was an abuse of discretion.  See Renda v. King, 347 F.3d 550, 553 (3d Cir. 2003) (reviewing ruling to admit or exclude evidence for an abuse of discretion); Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 412 (3d Cir. 2002) (holding that to show an abuse of

discretion, party "must show the district court's action was 'arbitrary, fanciful[,] or clearly unreasonable" (quoting <u>Stich v. United States</u>, 730 F.2d 115, 118 (3d Cir. 1984)); <u>Oddi v. Ford Motor Co.</u>, 234 F.3d 136, 146 (3d Cir. 2000) (holding that a trial court's exercise of discretion will not be disturbed unless "no reasonable person would adopt the district court's view"). Judge Green's decision to bar Monaco was not an abuse of discretion. Allstate did not timely identify Monaco as an expert, Monaco did not submit an expert report, and Monaco's employer – a company hired by Allstate – blocked his deposition from being taken. Accordingly, the post-trial motion is denied in this regard.

  e. *Ex Parte* Communications

  At the start of court proceedings on Monday, May 14, 2007, Judge Green put on the record that Plaintiff's Counsel had attempted to initiate an *ex parte* communication with him after court recessed the previous Friday. (Tr. 5/14/07 at 2-3.) Judge Green put on the record that he met with Counsel because he thought Counsel wished to discuss a scheduling issue, but that Counsel began to complain about the Court's rulings and had asserted that the Court failed to give Plaintiff enough time for his cross-examination of the representative of Allstate. Judge Green admonished Plaintiff's Counsel on the record, then asked Allstate if it wished to put anything on the record as well. Counsel responded:

> MS. STEIN: Obviously we're somewhat troubled in that our opposing counsel has had a conference with the Court. We understand from the Court what the contents of it was. While we find it to be inappropriate, the fact that it's not of record, and we certainly hope the Court will continue to handle the matter fairly. There's nothing else to be said.

(<u>Id.</u> at 3-4.)

  In its motion, Allstate argues that Judge Green erred when he failed to order a mistrial based

on the *ex parte* communications and failed to recuse himself from further involvement in the case, as required by the Code of Judicial Conduct for United States Judges, Canon 3, and 28 U.S.C. § 455. Allstate never moved for a mistrial or for recusal at the time Judge Green created the record of the *ex parte* communications, or at any other time before filing its post-trial motion. Allstate argues that it was unable to raise a contemporaneous objection as the specific issues discussed by Plaintiff's Counsel were never placed on the record.

Whenever a judge's impartiality "might reasonably be questioned" in a judicial proceeding, 28 U.S.C. § 455(a) requires that the judge disqualify himself.[4]  The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned. In re Kensington Int'l. Ltd., 368 F.3d 289, 301 (3d Cir. 2004) (citing Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 164 (3d Cir. 1993). "Under § 455(a), if a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality under the applicable standard, then the judge must recuse." Kensington Int'l at 301 (quoting In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 343 (3d Cir. 1998). "The standard for recusal is whether an objective observer reasonably might question the judge's impartiality." Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997). A party moving for disqualification under § 455(a) need not show actual bias because § 455(a) "concerns not only fairness to individual litigants, but, equally important, it concerns 'the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted.'" Kensington Int'l at 302

---

[4]The Code of Conduct similarly states "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonable be questioned. . . ." Code of Conduct for United States Judges, Canon 3(C)(1).

(quoting Alexander, 10 F.3d at 162, quoting In re School Asbestos Litig., 977 F.2d 764, 776 (3d Cir. 1992).

However, the United States Court of Appeals for the Third Circuit has made it clear that a party must object at trial in order to preserve the right to complain post-trial.  See Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir. 1998); Murray v. Fairbanks Morse, 610 F.2d 149, 152 (3d Cir. 1979). The Court of Appeals has specifically held that "when a party's attorney is aware of the grounds supporting recusal, but fails to act until the judge issues an adverse ruling, the recusal [typically] is not timely."  Kensington Int'l, 368 F.3d 289, 314-15 (3d Cir. 2004).  While we have not found authority holding that a party is required to request a mistrial to preserve an issue involving recusal, a contemporaneous objection is clearly required under the case law to preserve the right to seek a new trial on the basis of any trial issue.

We find that Allstate waived the *ex parte* communication issue when it failed to raise even an objection, let alone a mistrial or recusal motion at the time Judge Green disclosed the attempted *ex parte* contact.  Moreover, if we were to reach the merits, there is no evidence that Judge Green discussed anything substantive about the case with Plaintiff's Counsel.  To the contrary, Judge Green made clear on the record that no substantive discussions actually took place; that he stopped talking with Counsel once he realized that Counsel wished to discuss substantive issues.  Allstate made no contemporaneous attempt to develop the record further, nor did it raise the issue again until after adverse rulings were made.  Based on the record that was contemporaneously created, we find that a reasonable person, with knowledge of the facts, could not conclude that Judge Green's impartiality was reasonably called into question.  Accordingly, the post-trial motion is denied in this regard, both on the issue of waiver, and on its merits.

    f.     The Verdict was Against the Weight of the Evidence.

Finally, Allstate argues that the verdicts on both the Plaintiff's claims and its own counterclaim for concealment and fraud were against the weight of the evidence.  We find the verdict was not against the weight of the evidence.

There was ample evidence upon which the jury could reasonably determine that the Property was "occupied" since Pasqualina intended to return home after her convalescence.  There was also ample evidence that, even if she vacated the home, the heat was reasonably maintained in the Property since the oil tank had been filled by the contractor and every witness who had entered the home during the winter months while Pasqualina was in the hospital testified that the home was warm.  The evidence also showed that, as late as March 15, 2005, everything was normal in the home.  This evidence, along with the expert testimony, was sufficient to support the Plaintiff's theory that the pipe failed due to an improperly installed dishwasher, and not because of a failure to maintain heat in the building.   Accepting that theory of how the loss occurred, Allstate's counterclaim, based on its theory that the Ceceros attempted to hide the true cause of the loss, must fail.

V.     CONCLUSION

Accordingly, Allstate's post-trial motion is denied in its entirety.  An appropriate Order follows.

-20-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PASQUALINA CECERO                  :          CIVIL ACTION
                                   :
        v.                         :
                                   :
ALLSTATE INSURANCE CO.             :          NO. 06-286

## <u>ORDER</u>

**AND NOW**, this 3rd day of December 2007, upon consideration of Defendant's Motion for

Judgment as a Matter or Law (Docket Entry # 37), Supplemental Motion for Post Trial Relief

(Docket Entry # 62), and all responses thereto, **IT IS HEREBY ORDERED** that said Motions are

**DENIED**.

                              BY THE COURT:

                              /s/ John R. Padova

                              _____
                              John R. Padova, J.